IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                          No. CR 23-0091 JB

JERRY SEGURA, JR.,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Letter from Jerry Segura, Jr., to the Honorable John F. Robbenhaar, United States Magistrate Judge for the United States District Court for the District of New Mexico (dated July 21, 2024), filed July 26, 2024 (Doc. 41)("Motion"). The primary issue is whether Defendant Jerry Segura, Jr.'s sentence is eligible for a reduction pursuant to 18 U.S.C. § 3582(c)(2), when the retroactively applicable criminal history "status point" calculation amendment to the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") does not alter his criminal history category. Because the Court granted Segura a downward departure at sentencing that reduces his criminal history category from III to II, Segura is not eligible for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2). Accordingly, the Court lacks jurisdiction over the Motion and dismisses it.

## PROCEDURAL HISTORY

On May 8, 2023, Segura pleaded guilty to assault with a dangerous weapon, in violation of 18 U.S.C. § 1153 and 18 U.S.C. § 113(a)(3), and using and carrying a firearm during and in relation to a crime of violence, and brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). See Plea Agreement ¶ 3, at 2, filed May 8, 2023

(Doc. 28). The Plea Agreement is pursuant to rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure. See Plea Agreement at 1. In the Plea Agreement, the United States and Segura recommend that Segura receive a two-level reduction of his base offense level pursuant to U.S.S.G. § 3E1.1(a). See Plea Agreement ¶ 10, at 6. Besides this recommendation, the parties agree that "the Defendant's final sentence is solely within the discretion of the Court." Plea Agreement ¶ 10, at 7.

The United States Probation Office's Presentence Investigation Report, filed July 11, 2023 (Doc. 31)("PSR"), calculates Segura's criminal history score as 4. PSR ¶ 43, at 10. Two of the 4 points are status points that Segura receives for committing his crime while under a criminal justice sentence, pursuant to U.S.S.G. § 4A1.1(d). See PSR ¶ 42, at 10. Segura's criminal history category, therefore, is III. See PSR ¶ 43, at 10. The United States Probation Office ("USPO") recommends, however, that the Court grant Segura "a downward departure from the criminal history category of III to II" to "reduce the impact of 'status points' now." PSR ¶ 101, at 20. The USPO makes this recommendation, because Amendment 821 would take effect in four months, and Segura would not receive any status points pursuant to the amendment's changes to § 4A1.1(d). See PSR ¶ 101, at 20. As to Count 1, the USPO's recommendation results in a Guidelines range of 12 to 18 months. See PSR ¶ 101, at 20. As to Count 2, § 924(c)(1)(A)(ii) carries a mandatory minimum of 84 months. See § 924(c)(1)(A)(ii). At the August 9, 2023, Sentencing Hearing, the parties do not object to USPO's recommendation. See Draft Transcript of Hearing at 3:9-23 (taken August 9, 2023)(Court; Candelaria; Court; Jones)("Tr.").[1] Accordingly, the Court grants Segura a downward departure that reduces his criminal history

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

category from III to II, see Tr. at 30:16-25 (Court), and sentences Segura to 87 months of imprisonment, see Tr. at 33:22-34:4 (Court). See Tr. at 29:22-30:1 (Court)("Pursuant to -- as I indicated earlier, pursuant to Section 4A1.3, the Court finds a departure is warranted, as Defendant's criminal conduct is significantly overrepresented by his criminal history score."); Tr. at 30:20-22 (Court)("Accordingly, an offense level of 12, with a criminal history category of 2, establishes a Guideline imprisonment range of 12 to 18 months.").

## LAW REGARDING THE GUIDELINES

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States severed the mandatory provisions from the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1976, thus making Guidelines sentencing ranges advisory. See United States v. Booker, 543 U.S. at 261. In excising the two sections, the Supreme Court left the remainder of the Sentencing Reform Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." United States v. Booker, 543 U.S. at 261. Accordingly, even though the Guidelines are not mandatory, courts must consult them for advice in arriving at an appropriate sentence. See Peugh v. United States, 569 U.S. 530, 541-42 (2013). The Guidelines provide a starting point for the court's determination of a proper sentence. See Gall v. United States, 552 U.S. 38, 50 n.6 (2007)("[D]istrict courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process."); Peugh v. United States, 569 U.S. at 541 ("The post-Booker federal sentencing scheme aims to achieve uniformity by ensuring that sentencing decisions are anchored by the Guidelines and that they remain a meaningful benchmark through the process of appellate review.").

Congress has directed sentencing courts to "impose a sentence sufficient, but not greater

than necessary, to comply with" the four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> **(B)** to afford adequate deterrence to criminal conduct;
>
> **(C)** to protect the public from further crimes of the defendant; and
>
> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).

> [A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551.  To achieve these purposes, § 3553(a) directs sentencing courts to further consider: (i) "the nature and circumstances of the offense," as well as the defendant's "history and characteristics"; (ii) the available sentences; (iii) the Guidelines; (iv) any pertinent Sentencing Commission policy statements in effect on the date of sentencing; (v) the policy favoring uniformity in sentences for defendants who commit similar crimes; and (vi) the need to provide restitution to victims.  18 U.S.C. § 3553(a)(1), (3)-(7).

The United States Court of Appeals for the Tenth Circuit holds that, while the Guidelines are one of several factors which § 3553(a) enumerates, they are entitled to careful consideration. See United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  They are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . ." United States v. Cage, 451 F.3d at 593.  A court's careful consideration of the Guidelines is proper

in light of the fact that "[t]he Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." Rita v. United States, 551 U.S. 338, 349 (2007).

"[A] sentence within the applicable Guidelines range is presumptively reasonable." United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006), overruled on other grounds by Rita v. United States, 551 U.S. at 349, as recognized in United States v. Zamora-Solorzano, 528 F.3d 1247, 1251 n.3 (10th Cir. 2008). This presumption, however, is an appellate presumption, and not one that the trial court can or should apply. See Kimbrough v. United States, 552 U.S. 85, 90-91 (2007); Gall v. United States, 552 U.S. at 46-47; Rita v. United States, 551 U.S. at 351. Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption in favor of the advisory[2] Guidelines sentence. See Kimbrough v. United States, 552 U.S. at 90-91; Gall v.

---

[2]Attorneys and courts often say that the Guidelines are advisory, but it is more accurate to say that the resulting Guidelines ranges are advisory. See Gall v. United States, 552 U.S. 38, 46 (2007)("As a result of our decision [in United States v. Booker], the Guidelines are now advisory . . . ."); United States v. Sells, 541 F.3d 1227, 1237 (10th Cir. 2008)("[T]he sentence ultimately imposed by the district court was based on a correctly calculated Guidelines range, a stated consideration of the § 3553(a) factors, and an understanding that the Guidelines are advisory."); United States v. Leroy, 298 F. App'x 711, 712 (10th Cir. 2008)("[T]he Guidelines are advisory, not mandatory."). The Court must consider the Guidelines, see Gall v. United States, 552 U.S. at 46 ("It is . . . clear that a district judge must give serious consideration to the extent of any departure from the Guidelines . . . ."), and must accurately calculate the Guidelines range, see Gall v. United States, 552 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."). The Court is not mandated to apply, however, a sentence within the calculated Guidelines range. See United States v. Sierra-Castillo, 405 F.3d 932, 936 n.2 (10th Cir. 2005)("[D]istrict courts post-Booker have discretion to assign sentences outside of the Guidelines-authorized range . . . ."). Accord United States v. Segura-Rodarte, No. CR 08-2499, 2010 WL 3075285, at *2-3 (D.N.M. July 16, 2010)(Browning, J.).

> The Court must adhere to the following three-step sequence when sentencing a criminal defendant: first, determining the appropriate sentencing range on the basis of Guidelines' chapters 2 through 4; next, applying Guidelines-contemplated departures based on parts 5H and 5K; and, only then, varying from

United States, 552 U.S. at 46-47; Rita v. United States, 551 U.S. at 351.

>   While the Supreme Court's decision in United States v. Booker has given the sentencing court discretion that it did not have earlier, the sentencing court's first task remains to accurately and correctly determine the advisory-guideline sentence. Thus, before the sentencing court takes up a defendant's Booker arguments, the sentencing court must first determine whether the defendant is entitled to downward departures. The sentencing court may, however, also use these same departure factors in the Booker calculus, even if the court does not grant a downward departure.

United States v. Apodaca-Leyva, No. CR 07-1479, 2008 WL 2229550, at *6 (D.N.M. February

---

>   the Guidelines framework on the basis of the § 3553(a) factors taken as a whole. The Court must follow this sequence, because: (i) the Guidelines expressly provide for it, and courts must still consult the Guidelines, even if they will subsequently vary from them in the third step of the sequence; and (ii) adherence to this sequence is the only way to give effect to 18 U.S.C. § 3553(e).
>
>   . . . .
>
>   The Supreme Court held in United States v. Booker that "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing," 543 U.S. at 264, but further expounded in Kimbrough v. United States, 552 U.S. 85 (2007), that "courts may vary [from the Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," 552 U.S. at 101 (alteration in original)(internal quotation marks omitted). In theory, this freedom could mean that a district court may excise individual portions of the Guidelines along the way as it performs an otherwise by-the-book Guidelines analysis, end up with a sentence with built-in variances, and never even know what sentence a true, rigid Guidelines application would yield. In practice, however, appellate courts expect district courts to first obtain the true Guidelines' sentence range and circumscribe their United States v. Booker-granted authority to post-Guidelines analysis "variances." Irizarry v. United States, 553 U.S. 708, 710-16 (2008). A district court that attempts to vary from U.S.S.G. § 1B1.1's basic sequence most likely acts procedurally unreasonably. See Gall v. United States, 552 U.S. 38, 51 (2007)(holding that a sentence is procedurally reasonable if "the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence" (emphasis added)).

United States v. Nolf, 30 F. Supp. 3d 1200, 1222-24 (D.N.M. June 20, 2014)(Browning, J.)(emphasis in original).

13, 2008)(Browning, J.).  The Supreme Court has recognized, however, that sentencing judges are "in a superior position to find facts and judge their import under § 3553(a) in each particular case." Kimbrough v. United States, 552 U.S. at 89.  A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a).  See United States v. Booker, 543 U.S. at 261-62.

## LAW REGARDING 18 U.S.C. § 3582(c)(2) SENTENCE REDUCTIONS

"Generally, a district court may not modify a term of imprisonment once it has been imposed."  United States v. Williams, 575 F.3d 1075, 1076 (10th Cir. 2009).  "A district court is authorized to modify a Defendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so."  United States v. Blackwell, 81 F.3d 945, 947 (10th Cir. 1996).  18 U.S.C. § 3582(c)(2) establishes a narrow exception to this general rule of finality "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission."  18 U.S.C. § 3582(c)(2).  When the Commission revises the Guidelines in a way that reduces the Guidelines range for "a particular offense or category of offenses," the Commission must "specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced."  28 U.S.C. § 994(u).  "In this way the Act requires the Commission to decide whether amendments to the Guidelines should have retroactive effect."  Hughes v. United States, 584 U.S. 675, 681 (2018).  If an amendment applies retroactively, § 3582(c)(2) provides that "the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(2).

The Tenth Circuit has explained that a defendant must satisfy three prongs[3] to qualify for a sentence modification under Section 3582(c)(2).  See United States v. C.D., 848 F.3d 1286, 1289 (10th Cir. 2017)("C.D.").  First, "the defendant must show he was sentenced based on a guideline range the Sentencing Commission lowered subsequent to defendant's sentencing." C.D., 848 F.3d at 1289.  The first prong is jurisdictional: if the defendant fails to make this initial showing, "the district court lacks jurisdiction over the defendant's motion and the motion must be dismissed."

---

[3]Despite the clear pronouncement in United States v. C.D., 848 F.3d 1286 (10th Cir. 2017)("C.D."), that "Section 3582(c)(2) plainly tells us a defendant must overcome three distinct hurdles before he may obtain a sentence reduction," 848 F.3d at 1289 (emphasis in original), the Tenth Circuit has applied both a three-prong and two-prong analysis in unpublished § 3582(c)(2) decisions following C.D., compare United States v. Toombs, 712 F. App'x 791, 794 (10th Cir. 2017)("We have recently explained that a defendant must 'overcome three distinct hurdles before he may obtain a sentence reduction [under § 3582(c)(2)].'" (quoting C.D., 848 F.3d at 1289)(alterations in United States v. Toombs)), with United States v. Cota-Medina, No. 21-2063, 2022 WL 971894, at *2 (10th Cir. March 31, 2022)("In determining whether to grant a sentence reduction under § 3582(c)(2), the court engages in 'a two-step process.'").  District courts in the Tenth Circuit, likewise, continue to apply both a three-step and two-step analysis.  Compare United States v. Collazo, No. 09-CR-2621, 2020 WL 601943, at *2 (D.N.M. February 6, 2020)(Parker, J.)("The Tenth Circuit has explained that there are three prongs a defendant must meet to qualify for a sentence modification under 3582(c)(2)."), with United States v. Fabian-Hurtado, No. CR 21-0644, 2024 WL 706934, at *2 (D.N.M. February 21, 2024)(Johnson, C.J.)("When considering a retroactive Guidelines amendment, the Court engages in a two-step process.").

A two-pronged inquiry is appealing to a degree, because, under the three-prong analysis, "the second and third prongs overlap" to the extent that U.S.S.G. § 1B1.10 cmt. n.1(B), which courts must consider at the second step of the three-prong analysis, calls upon courts to evaluate the § 3553(a) factors that must be examined at the third prong.  United States v. Collazo, 2020 WL 601943, at *3.  As the Tenth Circuit formulates the two-step inquiry, however, the inquiry runs the risk of omitting evaluation of U.S.S.G. § 1B1.10 altogether, see United States v. Battle, 706 F.3d 1313, 1317 (10th Cir. 2013), and § 3582(c)(2) is clear that courts may reduce a defendant's sentence only "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," 18 U.S.C. 3582(c)(2).  The Court will apply, therefore, the three-prong analysis, because: (i) the Tenth Circuit's most recent published pronouncement on the matter plainly calls upon the courts to use a three-part test, see C.D., 848 F.3d at 1289; (ii) a three-step inquiry mirrors the similar and settled three-step inquiry courts undertake when evaluating a motion for compassionate release pursuant to § 3582(c)(2)'s sister statute, 18 U.S.C. § 3582(c)(1); and (iii) there is value in ensuring that the U.S.S.G. § 1B1.10 policy statement, and the important limitations to sentence reductions included therein, is given independent consideration.

C.D., 848 F.3d at 1289.[4]   See United States v. Munoz, 682 F. App'x 635, 636 (10th Cir. 2017)(remanding to the district court, because it "appear[s] that the district court denied the motion on the merits. It should have, instead, dismissed the matter for lack of jurisdiction.").  Second, a defendant must show that "his request for a sentence reduction is consistent with the Commission's policy statements."  C.D., 848 F.3d at 1289.  U.S.S.G. § 1B1.10 is the policy statement concerning a sentence reduction resulting from an amended Guidelines.  See C.D., 848 F.3d at 1289.  The second requirement, unlike the first, is "not a jurisdictional prerequisite to § 3582(c)(2) relief."  C.D., 848 F.3d at 1289.  "Third, the defendant must convince the district court he is entitled to relief in light of the applicable sentencing factors found in 18 U.S.C. § 3553(a)."  C.D., 848 F.3d at 1289-90.

Congress and the Sentencing Commission have placed three primary restrictions on the relief available under § 3582(c)(2).  First, courts cannot reduce the term of imprisonment below time served.  See U.S.S.G. § 1B1.10 cmt. n.3.  Second, courts may not reduce a defendant's

---

[4]Recently, the Tenth Circuit has called into question whether the § 3582(c)(2) analysis's first prong is jurisdictional.  See United States v. Warren, 22 F.4th 917, 926 n.6 (10th Cir. 2022)(acknowledging that, because 18 U.S.C. § 3582(c)(2) does not contain "an unequivocal statement from Congress" regarding its jurisdictional effect, "our precedent on this issue may need to be revisited," but declining to "seek en banc reconsideration of this question here").  As the Court has recognized, the Tenth Circuit recently has concluded that aspects of 18 U.S.C. § 3582(c)(1) are not jurisdictional.  See United States v. Haworth, No. CR 95-0491, 2023 WL 8112827, at *6 (D.N.M. November 22, 2023)(Browning, J.)(citing United States v. Hemmelgarn, 15 F.4th 1027, 1030-31 (10th Cir. 2021)(concluding that § 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional); United States v. Hald, 8 F.4th 932, 942 n.7 (10th Cir. 2021)(declining "to read a jurisdictional element in § 3582(c)(1)(A)'s 'extraordinary and compelling reasons' requirement when the statute itself provides no indication . . . to that effect" (quoting 18 U.S.C. § 3582(c)(1)(A))).  Nonetheless, because the Tenth Circuit has not revisited its holding that the Section 3582(c)(2) analysis's first step is jurisdictional, the Court must, as a district court, treat the first step as jurisdictional.  See United States v. Hald, 8 F.4th at 942 n.7 ("We acknowledge that this circuit has [held] that § 3582(c)(2)'s requirement that the defendant 'show he was sentenced based on a guideline range the Sentencing Commission lowered subsequent to defendant's sentencing' is a jurisdictional requirement that must be addressed first by the district court." (quoting C.D., 848 F.3d at 1289-90)).

sentence below the amended Guidelines range, unless the defendant originally received a below-Guidelines sentence because the United States made a motion to reflect the defendant's substantial assistance to authorities. See U.S.S.G. § 1B1.10 (b)(2)(A)-(B). In the substantial assistance case, a sentence "comparably less than the amended guideline range" may be appropriate. U.S.S.G. § 1B1.10 (b)(2)(B). See Dillon v. United States, 560 U.S. at 826-27 ("Only if the sentencing court originally imposed a term of imprisonment below the Guidelines range does § 1B1.10 authorize a court proceeding under § 3582(c)(2) to impose a term 'comparably' below the amended range.").[5] Third, a district court may not grant a sentence reduction if the defendant's original sentence was "based on" a statutory mandatory minimum sentence rather than a Guidelines range. 18 U.S.C. § 3582(c)(2). Mandatory minimums foreclose 18 U.S.C. § 3582(c)(2) sentence reductions even for defendants who escape the mandatory minimum by providing substantial assistance to law enforcement, because their sentences are "'based on' on their mandatory minimums and their substantial assistance to the Government, not on the sentencing ranges that the Commission later lowered." Koons v. United States, 584 U.S. 700, 702 (2018). Consequently, for these defendants, a reduced sentence under 18 U.S.C. § 3582(c)(2) is not available. See Koons v. United States, 584 U.S. at 702.

The Guidelines give specific guidance to courts contemplating sentence reductions.[6] First, courts "shall determine the amended guideline range that would have been applicable to the

---

[5]This language from Dillon v. United States, 560 U.S. at 826-27, is more general than the text of U.S.S.G. § 1B1.10(b)(2)(B). Section 1B1.10(b)(2)(B) only permits courts to reduce the defendant's term of imprisonment to a term that is less than the minimum of the amended guideline range if the term of imprisonment imposed was less than the term of imprisonment provided by the guideline range pursuant to a government motion to reflect the defendant's substantial assistance to the authorities. U.S.S.G. § 1B1.10(b)(2)(B).

[6]Sentence reduction hearings under this statute are not full resentencing proceedings. See U.S.S.G. § 1B1.10(a)(3) ("[P]roceedings under 18 U.S.C. § 3582(c)(2) and this policy statement

defendant if the amendment(s) to the guidelines listed in subsection (d) had been in effect at the time the defendant was sentenced." U.S.S.G. § 1B1.10(b)(1). In making this decision, courts "shall substitute only the amendments listed in subsection (d) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." U.S.S.G. § 1B1.10(b)(1). See Freeman v. United States, 564 U.S. 522, 531 (2011)(Kennedy, J., plurality opinion)("The binding policy statement governing § 3582(c)(2) motions places considerable limits on district-court discretion. All Guidelines decisions from the original sentencing remain in place, save the sentencing range that was altered by retroactive amendment."). In other words, "district courts cannot recalculate aspects of a sentence that are unaffected by a retroactively applicable amendment to the Guidelines." United States v. Washington, 759 F.3d 1175, 1182 (10th Cir. 2014). The Supreme Court has interpreted "all other guideline application decisions" broadly, holding that courts generally cannot revisit sentencing courts' calculations. U.S.S.G. § 1B1.10(b)(1). In United States v. Dillon, the defendant argued that the sentencing court's decision to treat the Guidelines as mandatory violated his Constitutional rights under United States v. Booker, 543 U.S. 220 (2005). See United States v. Dillon, 560 U.S. at 831. The Supreme Court rejected the defendant's attempt to "recalculate" his sentence and correct the error, explaining that this aspect of his sentence was "outside the scope of the proceeding authorized by § 3582(c)(2)." United States v. Dillon, 560 U.S. at 831.

---

do not constitute a full re-sentencing of the defendant."); Dillon v. United States, 560 U.S. at 83 ("[Section] 3582(c)(2) does not authorize a resentencing. Instead, it permits a sentence reduction within the narrow bounds established by the Commission.").

1.      **Amendment 821.**

The Sentencing Commission has a responsibility to periodically "review and revise" its Guidelines.  28 U.S.C. § 994(o).  It may choose to reduce the term of imprisonment "recommended in the guidelines applicable to a particular offense or category of offenses," but it must "specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced."  28 U.S.C. § 994(u).  Congress has directed the Sentencing Commission to formulate its Guidelines "to minimize the likelihood that the Federal prison population will exceed the capacity of the Federal prisons, as determined by the Commission."  28 U.S.C. § 994(g).

Before the Sentencing Commission promulgated Amendment 821, U.S.S.G. § 4A1.1(d) added 2 points to defendants' criminal history scores if they "committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status."  United States Sentencing Commission, Guidelines Manual, § 4A1.1(d) (Nov. 2021).  A defendant's criminal history score determines in which of six criminal history categories the defendant will fall.  See U.S.S.G. Ch. 5, Pt. A.  Generally, "more status points result in a higher criminal history category and a longer range of imprisonment under the guidelines."  United States v. Bailey, No. 19-CR-142, 2024 WL 453619, at *2 (E.D. Pa. February 6, 2024)(Kenney, J.).

Amendment 821, which came into effect in November of 2023, see Supp. to App. C at 244, reduces the number of criminal history points a defendant receives for committing the charged offense under a criminal justice sentence.  See Supp. to App. C. at 234; United States Sentencing Commission, Guidelines Manual, § 4A1.1(e) (Nov. 2023).  The Amendment, which has retroactive effect and thus may be applied to closed cases, see U.S.S.G. § 1B1.10(a)(1), (d), revises

how status points are calculated such that defendants with 7 or more criminal history points now receive 1, instead of 2 status points if they committed their offense while under a criminal justice sentence. See U.S.S.G. § 4A1.1(e); Supp. to App. C at 235. Amendment 821 also amends § 4A1.1 such that 1 status point is added only for those defendants committing an offense while under a criminal justice sentence who have over 7 status points. See § 4A1.1(e); United States v. Bailey, 2024 WL 453619, at *2 ("[D]efendants with six or fewer criminal history points now receive zero status points."). Additionally, Amendment 821 moves the language directing courts to apply the status-point increase from § 4A1.1(d) to § 4A1.1(e). See Supp. to App. C at 235. The result of Amendment 821's status-point reduction is that "approximately 11,500 [federal defendants] are eligible to seek a reduction in their current sentence." Materials Relating to the 2023 Criminal History Amendment, U.S. Sent'g Comm'n (last visited May 8, 2024), https://www.ussc.gov/policymaking/materials-relating-2023-criminal-history-amendment.

As justification for Amendment 821, the Sentencing Commission explains that, while "an offender's criminal history calculation under the guidelines is strongly associated with the likelihood of future recidivism by the defendant, . . . status points add little to the overall predictive value associated with the criminal history score." Supp. to App. C at 241 (citing U.S. Sentencing Commission, Revisiting Status Points (2022), https://www.ussc.gov/research/research-reports/revisiting-status-points). According to the Sentencing Commission, "recent research suggests that 'status points' improve the predictive value of the criminal history score less than the original Commission may have expected," and, "[a]ccordingly, the Commission determined that it was appropriate to address several concerns regarding the scope and impact of status points." Supp. to App. C at 241. First, the Sentencing Commission observes that a defendant impacted by § 4A1.1(e) likely will already face a separate "consecutive punishment imposed upon revocations

- 13 -

of supervised release." Supp. to App. C at 241. Second, the Sentencing Commission observes that "it is also possible that an offender's criminal history score would be independently increased as the result of additional time imposed as the result of a revocation of probation or supervised release for the offense that also results in the addition of status points." Supp. to App. C at 241.[7]

---

[7]While the Court is unable to do the research to question the Sentencing Commission's decision that status points add little to predict future criminal activity, the Court thinks that there are other reasons that status points may be valuable. Congress evidently thinks that it is important for the federal court to supervise defendants coming out of prison; but supervision of recently incarcerated individuals does not necessarily have to fall under the purview of the judiciary. Federal judicial supervision of defendants is a relatively novel practice, which only began in 1984 with the passage of the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1987 (1984). By contrast, in New Mexico, State probation officers are in the corrections department, and not in the State judiciary. See Probation and Parole, New Mexico Corrections Department, www.cd.nm.gov/divisions/probation-and-parole. The Court does not think the federal courts should be supervising their defendants, as supervising defendants is not a core judicial function. Nevertheless, Congress wants the federal courts to perform this supervision, and the Court is obligated faithfully to carry out this task -- even if it is not its favorite judicial obligation.

Supervised release is a major part of the Court's job. In a border State with twenty-three Indian reservations and because the Court has been on the bench for twenty-one years, the Court has sentenced approximately 2800 defendants; the number of people on supervised release grows with years of service. The District of New Mexico ranks fifth among the ninety-four districts in the number of filed criminal cases. See U.S. District Courts - Criminal Defendants Filed, by Offense and District, Table D-3, United States Courts (2024), https://www.uscourts.gov/statistics/table/d-3/statistical-tables-federal-judiciary/2024/06/30. By way of example, the Court held seventy-three revocation hearings in 2023. Hence, the burden of supervised release on the Court is great and unwelcome.

The Court's view notwithstanding, once Congress has given the Court the task of supervising defendants coming out of prison, it must do the best to perform this responsibility faithfully. While status points may not predict future criminal activity, they send a signal that the federal court takes supervised release seriously. By amending the Guidelines to add Amendment 821, the Sentencing Commission has just weakened that signal in two ways. First, the Sentencing Commission has told defendants that it is lowering the points they will receive when they violate supervised release. Second, the Sentencing Commission tells everyone in prison that the lowering is retroactive, broadcasting to everyone in prison that the Sentencing Commission is lowering the points of supervised release.

Two years ago, the Court went to Seattle to the United States Sentencing Commission Conference and urged the Sentencing Commission not to make Amendment 821 retroactive. Even if the Sentencing Commission going forward does not want to assign status points, there is no sound reason to make this change retroactive. The Court works very hard to sentence its approximately 130 defendants each year, and then the Sentencing Commission tells the Court it must reevaluate these sentences. Nothing in justice and fairness requires this additional work;

## ANALYSIS

The Court denies the Motion. In applying the three-step analysis that C.D., 848 F.3d at 1289, mandates, the Court concludes that Segura has not satisfied § 3582(c)(1)(A)'s first prong:

---

there is nothing "wrong" with the first sentence. A Sentencing Commission's ideological desire to decrease the prison population does not alleviate the burden that the process places on the courts and the signal that it sends to defendants that the system does not take supervised release as seriously as it used to do.

    Finally, in the Court's view, some of the Sentencing Commission's observations do not reflect reality. For example, the Sentencing Commission observes that defendants implicated by § 4A1.1(a) likely will already face a separate "consecutive punishment imposed upon revocations of supervised release." Supp. to App. C at 241. While the Court cannot say what every judge does, the Court rarely, if ever, makes the sentence for revocation fully consecutive. The Court works hard to come up with a reasonable sentence for the new crime. To start slapping another few months and running it all consecutively sometimes undoes all the work on the new sentence. Typically, the Court gives the defendant a Guideline sentence for the revocation violation, but runs the entire sentence concurrently, except 1 month, which it runs consecutively. This practice does not undo all of the hard work on the new sentence but gives the defendant a month for violating supervised release. This month sends a signal to the defendant that the Court takes supervision seriously. The Court orally describes to the defendant that this one month is specifically for violating supervised release; the defendant should remember that he or she is serving that last month because he or she violated supervised release. The Court talks to defendants about the importance of supervised release and that, if he or she violates it, all of the Court's, as well as the parties', hard work to create a fair sentence will go out the window.

    The current United States Attorney and his Assistants' positions in this case, and many others before the Court, are proof that the Sentencing Commission's policy changes are wrongheaded. The current United States Attorney and his Assistants believe that the Court should not reduce Martinez' sentence. See Response at 1. The Court is sympathetic to the line attorneys' concern with lowering the guideline range for these sentences, and the Court encourages the line attorneys to direct their arguments to Main DOJ and to Attorney General Merrick Garland, who helped fill the spots that President Trump left open. See Acting Chair Judge Charles Breyer, Incoming Chair Judge Carlton W. Reeves Applaud Senate Confirmation of New Commissioners, United States Sentencing Commission (August 5, 2022), https://www.ussc.gov/about/news/press-releases/august-5-2022.

    As much as the Court disagrees with what the Sentencing Commission is doing with Amendment 821, particularly in its decision to make Amendment 821 retroactive, the Court also believes that elections have consequences. President Trump, who passed the First Step Act, largely to attract African American votes, see Greg Miller, Allegations of Racism Have Marked Trump's Presidency and Become Key Issue as Election Nears, Wash. Post (July 2, 2020)("[F]ormer officials said that Trump only agreed to support the measure when told it might boost his low poll numbers with Black voters."), did not fill the vacancies on the Sentencing Commission to implement his Act. President Biden filled these spots. The Court will not let its own thoughts about policy block its duty to implement the Sentencing Commission's decision on policy. The Court will attempt to apply the new rules as faithfully as it possibly can.

while Segura' sentence is based on the Guidelines, Amendment 821's retroactive application does not result in a lower Guideline imprisonment range than Segura had at the time of his sentencing, because the Court already lowered his criminal history category from III to II. See C.D., 848 F.3d at 1289.

First, as a matter of law, Segura's sentence is based, pursuant to Hughes, on the Guidelines. At the risk of adding more prongs to an already multi-pronged analysis, the Court notes that it must answer two questions in addressing C.D.'s first step: (i) whether the defendant's sentence is based on a Guideline range; and (ii) whether, if the sentence is based on a Guidelines range, has the Sentencing Commission subsequently lowered that Guideline range. "In the typical sentencing case, there will be no question that the defendant's Guidelines range was a basis for his sentence," because "[t]he Sentencing Reform Act requires a district court to calculate and consider a defendant's Guidelines range in every case." Hughes, 584 U.S. at 686 (citing 18 U.S.C. § 3553(a)). The Court considered the Guideline range in this case. The rule 11(c)(1)(B) plea agreement gives the Court discretion to sentence Segura. At the sentencing hearing, the Court stated that he "considered the kinds of sentence and range established by the Guidelines" in arriving at Segura's sentence. Tr. at 32:12-13 (Court). Accordingly, pursuant to Hughes, Segura's sentence is based on the Guidelines.

Notwithstanding this conclusion, Segura does not clear the other half of C.D.'s first prong: whether the Sentencing Commission subsequently lowered his Guideline range. See C.D., 848 F.3d at 1289. Amendment 821 applies retroactively. See U.S.S.G. § 1B1.10(a)(1), (d); United States v. Claybron, 88 F.4th 1226, 1228 (7th Cir. 2023). Amendment 821's Part A alters U.S.S.G. § 4A1.1, changing the way criminal history status points are calculated for the purposes of establishing the defendant's criminal history category. Section 4A1.1(e) adds "status" points to

a defendant's criminal history score if the defendant "committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release[ ] or escape status." U.S.S.G. § 4A1.1(e).  Under Amendment 821's Part A, defendants with 7 or more criminal history status points now receive 1 status point rather than 2 additional status points, and defendants with less than 7 criminal history status points receive no additional status points if they committed their offense while under a criminal justice sentence.  See Supp. to App. C at 235; United States v. Fabian-Hurtado, No. CR 21-644, 2024 WL 706934, at *2 (D.N.M. February 21, 2024)(Johnson, C.J.).

Amendment 821 does not apply, however, to Segura.  The Court and the parties agreed to a downward departure that preempted Amendment 821's application to Segura by prospectively lowering his criminal history category from III to II.  See Tr. at 3:9-23 (Court; Candelaria; Court; Jones).  Lowering Segura's criminal history category negates the effect of the 2 status points Segura receives, which, when added to the 2 points he receives from his criminal history subtotal, propel him into category III.  It follows that applying Amendment 821 to Segura does not lower his Guideline range, because his criminal history category is already II.  See C.D., 848 F.3d at 1289 ("[T]he defendant must show he was sentenced based on a guideline range the Sentencing Commission lowered subsequent to defendant's sentencing.").[8]  Because eliminating Segura's status points does not affect his criminal history category and, correspondingly, his Guideline range, the Court lacks jurisdiction over his Motion, and dismisses it.  See United States v. Hald, 8 F.4th at 942 n.7 ("We acknowledge that this circuit has [held] that § 3582(c)(2)'s requirement that

---

[8]Amendment 821's Part B decreases certain zero-point offenders' offense level by 2 levels if the defendant meets certain criteria.  See Supp. to App. C. at 236.  Segura is not a zero-point offender, however; he has 2 criminal history points.  See PSR ¶ 41, at 10.  Accordingly, Segura is ineligible for any relief based on Amendment 821's Part B.

the defendant 'show he was sentenced based on a guideline range the Sentencing Commission lowered subsequent to defendant's sentencing' is a jurisdictional requirement that must be addressed first by the district court." (quoting C.D., 848 F.3d at 1289-90)).

**IT IS ORDERED** that the Letter from Jerry Segura, Jr., to the Honorable John F. Robbenhaar, United States Magistrate Judge for the United States District Court for the District of New Mexico (dated July 21, 2024), filed July 26, 2024 (Doc. 41), is dismissed.

_____
UNITED STATES DISTRICT JUDGE

*Parties and counsel:*

Alexander M.M. Uballez
   United States Attorney
Zach Jones
   Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Jerry Segura, Jr.
Adelanto, California

   *Defendant pro se*